UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL LOVELY, | ) |
| | ) |
|      Movant, | ) |
| | ) |
| v. | ) Civil No. 2:10-cv-00079-DBH |
| | ) Crim. No. 2:06-cr-00062-DBH-2 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|      Respondent | ) |

**RECOMMENDED DECISION ON  28 U.S.C. § 2255 MOTION**

Michael Lovely has filed a 28 U.S.C. § 2255 motion listing three challenges to his 210-month career offender sentence that flowed from his mid-trial guilty plea to federal drug offenses.  In this § 2255 motion Lovely presents three grounds: one, he argues that he should have only been held accountable for the quantity of crack cocaine seized at the time of his arrest rather than the amounts attributed to the conspiracy; two, the court should have reduced his guideline range by two levels based on the retroactive amendments to the crack cocaine guidelines; and, three, his attorney was ineffective because he never raised these two issues at sentencing. I have reviewed this motion pursuant to Rule Governing Section 2255 Proceedings 4(b) and recommend that the Court deny Lovely  28 U.S.C. § 2255 relief.

*Discussion*

Lovely did pursue a direct appeal, "arguing that the district court did not recognize it had discretion to reduce a career criminal offender Guideline sentence and that it did not sufficiently take into consideration Lovely's background in sentencing him."  United States v. Lovely, 317

Fed.Appx. 18, 18, 2009 WL 782811, 1 (1st Cir. Mar. 26, 2009) (unpublished, per curiam).  These

claims were unsuccessful.[1]

***Lovely's 28 U.S.C. § 2255 Claims***

With regards to Lovely's first two 28 U.S.C. § 2255 challenges, "the general rule [is] that

claims," other than ineffective assistance of counsel claims, "not raised on direct appeal may not

be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v.

---

[1]    The Panel explained with respect to this Court's sentencing of Lovely as a career offender:
        Policy statements in the guidelines follow the mandate to the Commission in 28 U.S.C. §
994(h) to "assure that the guidelines specify a sentence to a term of imprisonment at or near the
maximum term" for career offenders as defined in the statute. The background commentary to
USSG § 4B1.1, the career criminal offender guideline, makes clear that the guideline implements
the directive of the statute. While not decisive, "[p]olicy statements issued by the Sentencing
Commission are, of course, pertinent to sentencing determinations even under the now-advisory
guidelines." United States v. Martin, 520 F.3d 87, 93 (1st Cir.2008) (citing 18 U.S.C. §
3553(a)(5)). The Supreme Court has also emphasized the need for sentencing courts to follow the
factors outlined in § 3553(a). See Kimbrough v. United States, 552 U.S. 85 (2007) ("while [§
3553(a) ] *still requires a court to give respectful consideration to the Guidelines, ...,* Booker
permits the court to tailor the sentence in light of other statutory concerns") (emphasis supplied).
The court here properly assessed the 3553(a) factors, including the Congressional intent evidenced
in the policy statements, and it also maintained that the Guideline range was advisory.
            The court's discussion with the parties about the appropriate role of § 994(h) does not
demonstrate that it failed to understand its discretion, only that it sought guidance about how best
to incorporate the statutory directive in its application of the advisory Guidelines. The court made
clear its own understanding that the Guidelines themselves were advisory but sought clarification
from counsel on whether he could "just ignore" the language of § 994(h). The parties replied that §
994(h) had to be considered. The court did just that, assessing it in the context of the factors
expressed in § 3553(a). There was no error.

Id. at 19.   With regards to Lovely's second direct appeal challenge, the First Circuit concluded:

        Lovely also claims that the district court "did not address the complete disconnect" between
his Career Offender predicates and his offense conduct and failed to "discuss the special
circumstances of those crimes" in imposing the sentence. This claim fails because the district court
directly and reasonably addressed Lovely's concerns at sentencing. It noted first, in response to the
defense's argument for a departure on the grounds that Lovely's risk of recidivism was low,
        I do not find departure appropriate. I don't find any overrepresenta[]tion of criminal history
here. The recidivism that Mr. Lovely has shown and the violence that he has shown suggests
that the criminal history calculation is appropriate, and I don't find that the circumstances here
do justify a[§ ] 5K2.0 departure.
        The court was within its discretion to choose not to impose a departure. Jimenez-Beltre, 440
F.3d at 519. The district court similarly considered defendant's arguments that Lovely was
different because he dealt primarily marijuana, not crack, and because he accepted responsibility
for his conduct and cooperated with authority. The court concluded that these factors could be
appropriately addressed with the  election of a sentence within the Guideline range. The court's
sentence was not unreasonable.
Id. at 19-20.

United States, 538 U.S. 500, 504 (2003) (citing United States v. Frady, 456 U.S. 152, 167-68 (1982) and Bousley v. United States, 523 U.S. 614, 621-22 (1998)). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important interest in the finality of judgments." Id.

Of course Lovely's third Strickland v. Washington, 466 U.S. 668 (1984) premised ineffective assistance of counsel ground can be read as attempting to make that cause and prejudice showing. See cf. Sawyer v. Whitley, 505 U.S. 333, 363-64 (1992); Janosky v. St. Amand, __ F.3d __, __, 2010 WL 366743, 3 (1st Cir. Feb. 3, 2010). "In theory, Strickland attacks (including its own prejudice prong) go to the separate "cause" as opposed to the "prejudice" standards for overcoming default." Lynch v. Ficco, 438 F.3d 35, 49 (1st Cir. 2006). However, the First Circuit has "held that Strickler v. Greene, 527 U.S. 26 (1999), requires a finding that if a habeas petitioner can meet the prejudice standard needed to establish ineffective assistance under Strickland, then the prejudice standard under the 'cause and prejudice' showing to excuse a procedural default is also met." Id. (citing Prou v. United States, 199 F.3d 37, 49 (1st Cir.1999)).

### Attribution of Crack Quantity

On October 11, 2006, while in the midst of trial with co-defendant Ryan Butterworth, Lovely changed his plea of not guilty to guilty on both counts of the superseding indictment. During the change of plea hearing the prosecutor summarized the case against Lovely as it stood after two days of trial:

> As the Court has seen during the course of this trial, the Government would introduce testimony from various witnesses who indicated that Mr. Butterworth and Mr. Lovely possessed five grams or more of cocaine base or crack with intent

to distribute both at the Cumberland Avenue location in Portland and the River
Street location in Westbrook.

  In addition to the witness testimony, there is also testimony from physical
evidence seized from the search warrant that was executed on July 2nd, 2006 at
the River Street apartment in Westbrook that Mr. Lovely and Mr. Butterworth
shared.

(Rule 11 Tr. at 9-10.)  Relevant to the crack cocaine attribution concern raised by Lovely, the

following interchange occurred during the change of plea proceeding:

  THE COURT: Mr. Lovely, you have been here throughout the trial. You've heard
  what Mr. Wolff, the prosecutor just said to me. I want you to tell me if there is
  anything in terms of the charges against you, about having this agreement to
  distribute marijuana and cocaine base or crack, and having this agreement to
  possess either of those substances with the intent to distribute them, or if there is
  anything that you disagree with about your possession of crack or aiding and
  abetting Ryan Butterworth in the possession of crack, and in particular the
  quantity which is said to be five grams or more, is there anything that I heard
  from the witnesses on those subjects that you disagree with?
  THE DEFENDANT: Yes, Your Honor.
  THE COURT: Tell me about that.
  THE DEFENDANT: On Cumberland Avenue, I did not participate in dealing
  crack cocaine from the Cumberland Avenue apartment. I did not start doing that
  until the last two weeks of June, and in the case of Mr. Butterworth, he had no
  knowledge of it.
  THE COURT: Anything else that you disagree with?
  THE DEFENDANT: No, Your Honor.
  THE COURT: So as to the testimony and evidence that I've heard, aside from
  those disagreements you've expressed, is it otherwise true to your personal
  knowledge with respect to your involvement in the conspiracy and the possession
  with intent to distribute?
  THE DEFENDANT: Yes.
  [THE PROSECUTOR]: And Your Honor, I'm sorry to interrupt, I didn't also
  specify when asked by the Court, in addition to the testimony that the Court has
  heard, the Government was intending to produce and may during the course of the
  remaining trial the testimony of Fred McMann who will testify both directly that
  Mr. Butterworth and Mr. Lovely had, in fact, distributed cocaine and had
  discussions with Mr. Lovely when Mr. Lovely indicated he was, in fact, involved
  with Mr. Butterworth in distributing or possessing with intent to distribute crack
  cocaine.
  THE COURT: I take it those would also be at the Westbrook location?
  [THE PROSECUTOR]: That's correct. That would solely be for the Westbrook
  location, River Street location.
  THE COURT: Do you want to disagree with that, Mr. Lovely?
  THE DEFENDANT: No.

THE COURT: Very well. I find that there is a factual basis for the guilty plea to both counts of the superseding Indictment. The record of the trial during the last two days is part of that factual premise, as well as what has just been recited here.

(Id. at 10-12.)

Apropos the issue of the attribution of crack cocaine quantity, the Second Revised PSI

summarized:

With respect to the crack cocaine quantities, the Probation Office has relied on the quantity seized from Butterworth's bedroom (5.045 grams) and statements made by Frederick McMann. McMann stated that, beginning in June 2006, he was provided 1/8 ounce (one ounce equals 28.35 grams or 3.5 grams per 1/8), three to four times a day, by Butterworth for distribution (3.5 grams x 3 times/day = 10.5 grams /day). This continued for three weeks (10.5 grams x 21 days = 220.5 grams), until McMann lost some of the crack cocaine he was to sell. Then he was restricted to one gram a day for about one week (1 gram/day x 7 days = 7 grams). On the day the defendant was arrested, McMann stated he had sold three grams. Therefore, for the crack cocaine in this case, the defendant has been attributed with 1.578.15 kilograms of marijuana equivalent (220.5 gr **+** 7 gr **+** 8.045 gr = 235.545 gr x 6.7 kg = 1,578.15 kg of marijuana). Adding the amount of actual marijuana reference in paragraph 7, provides a total marijuana equivalent of **1,579.17 kilograms** attributed to the defendant.

(2d Revised  PSI ¶ 8.)   This calculation led to the Second Revised PSI's base offense level of 32, for

drug quantities of at least 1000 kilograms, but less than 3000 kilograms of marijuana.  (Id.  ¶ 14.)

This is the drug quantity range the Court accepted.  (Sentencing Tr. at 47.)

The report preparer did argue for a two point reduction for acceptance of responsibility:

**Adjustment for Acceptance** of Responsibility: Pursuant to USSG §3E1.I(a), the offense is reduced two levels. The Probation Office believes Lovely has accepted responsibility for his involvement in the conspiracy. Based on statements made by the majority of witnesses, it is believed Lovely knew Butterworth was selling cocaine from the apartment, that he provided money to Butterworth to purchase the cocaine, and, on at least one occasion, collected a drug debt. With the exception of one witness seeing Lovely handle cocaine, there is no other indication that Lovely was actively selling crack cocaine. The defendant admitted his involvement in the conspiracy and pled guilty prior to the conclusion of the trial. Although the defendant pled guilty, his guilty plea was entered in the middle of his trial with respect to the instant offenses. Therefore, his guilty plea was not timely, and the government already indicated they will not be making a motion for the third level.

(2d Revised PSI ¶ 20.)

For its part the United States was aggressive in seeking an obstruction of justice enhancement and the denial of an acceptance of responsibility reduction.  With respect to the linkage of Lovely to crack sales, it pointed out:

> Following the Defendant's guilty plea, the trial continued against Butterworth. The government presented the testimony of McMann, who had agreed to testify pursuant to a plea agreement. McMann stated that he lived in the same building as the Defendant and Butterworth, and that he sold crack cocaine for them. See id. at 433-34. McMann stated that it was the Defendant who approached him about selling drugs. Id. at 434-35. McMann stated that he obtained crack from the Defendant and Butterworth four or five times per day over a period of three or four months. Id. at 435. McMann stated that he was given varying amounts of crack to sell, and that on some occasions it was an "eight-ball," weighing 3.5 grams. Id. at 435-36. McMann stated that he sold each eight-ball for $250, and estimated that he sold an average of $1500 of crack per day. Id. at 437-38. McMann stated that he provided the proceeds to either the Defendant or Butterworth, and that he was paid in crack. Id. at 438-39. McMann described the Defendant as "more like the head cheese. . . . It was his money. It wasn't Butter's." Id. at 440.
> McMann stated that on one occasion, he owed the Defendant and Butterworth $250 because an eight-ball had been stolen from the safe in his apartment. Id. at 439. McMann stated that Lovely gave him two hours to come up with the money and threatened him with harm if he did not have it by then. Id. at 440, 442.

(Gov't Sentencing Mem. at 4.)

In his sentencing brief defense counsel supported Lovely's bid for an acceptance of responsibility reduction and attacked the obstruction of justice enhancement: "[D]espite the government's assertion that the defendant is unwilling to accept responsibility, and is minimizing his involvement, the defendant raises no objection to the calculations found in paragraph 8 of the PSR. Specifically, the defendant takes responsibility for the attribute[ion of]  235 grams of crack cocaine. Cocaine which was, in large part, sold by Co-defendant Butterworth."  (Def.'s Sentencing Br. at 2.)  "Clearly," counsel opined, "given the defendant's plea and admissions to Probation he understands and accepts his involvement with the distribution of crack cocaine.

Yet, this does not conflict with the defendant's honest belief that he was primarily selling

marijuana until the later part of the drug conspiracy. As detailed below, the defendant has openly

accepted his guilt in a manner which does not justify, legally or otherwise, an increased sentence

of 9 plus years." (Id. at 2-3.)  Also relevant is counsel's reflection: "During the final proffer

meeting Lovely explained how during the short period at the tail end of his drug dealings he

ultimately became involved with crack sales. Yet, while the defendant was able to give details as

to the amounts of marijuana sold, he could not do the same with the crack distribution." (Id. at

15-16.)  And counsel forcefully argued against the United States opposition to the acceptance of

responsibility reduction:

> [I]n what regard has the defendant attempted to dodge his acceptance of
> responsibility? First, there has been no objection to accepting his participation
> with over 235 grams of crack cocaine. Secondly, the defendant admits to being
> both an investor and debt collector. It would seem illogical to now come forth and
> say the defendant has not accepted responsibility as to what he has entered a plea
> of guilty to. Clearly, the defendant's recollection of when he started to join with
> Butterworth is at times confusing and conflicting. While we readily accept faulty
> recollections when witnesses testify as to recollected dates, why is it the
> government now insists that the defendant have a precise recollection as to
> otherwise unnoticed dates? Moreover, are we to assume none of the confusion
> may come[] from Probation's attempts to provide a condensed narrative of the
> defendant's possibly more robust accounting? Clearly, recollection and reporting
> is far more fluid than exact. At the end of the day, the defendant admitted his
> involvement, pled guilty, and reported to Probation in a manner which allowed
> them to use their years of experience and conclude "[t]he Probation office
> believes Lovely has accepted responsibility for his involvement in the
> conspiracy." PSR, paragraph 20 & 22A.

(Id. at 23-24.)

With respect to Lovely's exposure to an obstruction of justice enhancement, sentencing

counsel opined:

> The government is correct - had the defendant attempted to lead probation to
> believe he had but a minor role and only knew of the crack cocaine sales for one
> week "[t]he defendant's statements [] could have affected where in the applicable
> guidelines['] range he would be sentenced." *Government's Sentencing*

> *Memorandum*, p. 9. Yet, if the statements of the defendant, which are only
> condensed in paragraph 11 of the PSR, were of such a nature the PSR would note
> it. For not only would have Probation been required to alert the court of the
> misinformation, Probation, when calculating the drug quantities, would have
> clearly explained why they did not agree with the defendant's otherwise
> misleading statements. The reason Probation did not report a lack of acceptance,
> or explain their differing calculations, was because the defendant's narration in no
> way was misleading as to material facts.

(<u>Id.</u> at 25-26.)

As to the obstruction of justice, this Court concluded that there was obstruction of justice as a consequence of the comments made by Lovely to the probation officers in the hopes of minimizing his involvement and, thus, his sentencing exposure. (Sentencing Tr. at 47.) However, and of no small moment given the obstruction of justice determination, the Court ultimately was persuaded by the defense pitch for acceptance of responsibility, arriving at a sentencing range of 210 to 260 (Sentencing Tr. at 47-48) rather than the 262-327 postulated by the United States in its sentencing memorandum (Gov't Sentencing Mem. at 10 n.5.)

Given the travel of Lovely's case as highlighted by the record summarized above, Lovely simply has no prospect of demonstrating to the Court that either prong of the <u>Strickland</u> standards can be established.  In making this assessment I am very cognizant of this Court's sentencing assessments made after presiding over the trial and the change of plea, considering the description of Lovely's proffers by the prosecution and defense,  and pondering Lovely's direct representations to the court.  <u>See</u> <u>United States v. McGill</u>, 11 F.3d 223, 225 (1st Cir. 1993) (observing that, when, a "petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing.").

### Crack Guideline Amendment

With respect to Lovely's second attack on counsel's performance, the holding in <u>United</u>

States v. Caraballo, 552 F.3d 6 (1st Cir. 2008) soundly rebuts any suggestion that counsel should

have pressed the court to apply the crack amendments to his career offender sentence.[2]  The

Caraballo Panel "succinctly summarize[d]" with respect to a defendant that was sentenced prior

to the amendments:

> Had the new guideline provision for crack cocaine offenses (Amendment 706)
> been in effect when this defendant was sentenced, that provision would not have
> had any effect on the sentencing range actually used. As we have said, the
> defendant's actual sentencing range was produced by reference to section 4B1.1
> (the career offender guideline), not section 2D1.1 (the crack cocaine guideline).
> Thus, Amendment 706 did not lower the defendant's actual sentencing range.
> Consequently, the district court did not err in determining that it lacked the
> authority to modify the defendant's sentence under 18 U.S.C. § 3582(c)(2).

Id. at 11.

### Conclusion

Having screened this 28 U.S.C. 2255 motion pursuant to Rule Governing Section 2255

Proceedings 4(b), I recommend that the Court deny Lovely § 2255 relief.  I further recommend

that a certificate of appealability should not issue in the event Lovely files a notice of appeal

because there is no substantial showing of the denial of a constitutional right within the meaning

of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate
judge's report or proposed findings or recommended decisions entered pursuant to
28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought,
together with a supporting memorandum, within fourteen (14) days of being
served with a copy thereof.  A responsive memorandum shall be filed within
fourteen (14) days after the filing of the objection.

---

[2]     It was not as if the amendments were entirely off the radar. The prosecutor noted during sentencing:
> This is not a situation – I know the Court has faced situations where the career offender
> provisions doubled somebody's potential sentence.  This is not one of those situations.
> When you consider the amount of crack that was dealt in a very short amount of time,
> you are not dealing with an incredible disconnect between what the guidelines would otherwise
> be, even after the recent reduction in the offense levels for crack distribution.

(Sentencing Tr. at 43.)

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

February 24, 2010.